36972. HEWITT *et al. v.* DAVIS.

DECIDED JANUARY 20, 1958—
REHEARING DENIED FEBRUARY 3, 1958.

*H. B. Edwards, Sr., H. B. Edwards, Jr., W. J. Gibbons, J. Lundie Smith,* for plaintiffs in error.

*Franklin, Eberhardt, Barham & Coleman, H. C. Eberhardt,* contra.

GARDNER, Presiding Judge. ■ The first question to be determined is: Did the trial court err in permitting the plaintiff Davis to testify, from his income tax returns, that he had paid Federal income taxes, on an accrual basis, upon the sums he claimed Hewitt owed him, over the objection of Hewitt that such testimony was a "self-serving declaration"?

Counsel for the defendants, in support of this contention, call our attention to *Denton* v. *Etheridge,* 73 *Ga. App.* 221 (3) (36 S. E. 2d 365) and *Rabun* v. *Wynn,* 209 *Ga.* 80 (4) (70 S. E. 2d 745), but in our opinion these authorities do not sustain the contentions of the defendants, under this record.

The evidence to which objection is made by counsel for the defendants was limited to testimony of the plaintiff Davis as to his Federal income tax returns for the year 1953. Evidence of a similar nature was admitted without objection. The plaintiff Davis testified that he made a return for 1953 showing an income of $13,434.61 and testified that this was the same amount he had reported to the Federal government and that this amount included a salary of $135 per week and ten percent net on the guarantee fund. No objection was made to this evidence. The evidence for the plaintiff Davis was further developed, without objections, regarding the purported income tax for the year 1954 to the State of Georgia and the items of that return were declared to be the same as shown in the Federal income tax return. Again we might call attention in this connection to the cross-examination of Mr. Ralph Finney who had been auditor for the defendants of the check and title guarantee fund involved during the two years in question. On cross-examination the following questions were

asked and the answers shown were elicited: "Q. You heard him [Davis] testify this morning on this stand that he knew he was supposed to receive the money before he reported it to the government and paid tax on it. Now don't you know that he put it on his tax return and was willing to pay taxes on it provided he could use that and make Tom Hewitt pay it to him? A. No sir, I don't know that, because I was the one who advised him to put it on his tax return. Q. Who [you] made the tax returns? A. Yes. Q. For which years? A. Well, I made them for all years from about 1946 or 1947 through September 30, 1954. That was the last one I made for Mr. Hewitt. Q. You didn't make Mr. Davis'? A. No, sir. Q. Didn't you have anything to do with that? A. I had something to do in advising him to report this as constructively-received income, for two reasons; one for his protection and one for Mr. Hewitt's. Q. Mr. Finney, you say constructive? A. Constructive receipt; it requires a person to report his receiving something that he could have gotten even though he didn't get it. Q. Have you ever read any Federal law about that? A. Many times. Q. Are you familiar with it? A. Yes, sir. Q. Do you, in making people's tax returns, put down money on it that they have never received? A. Yes, sir, quite often. In this case it would have strengthened Mr. Hewitt's hand as a reduction,— the fact that he had acknowledged that he had technically received it,—he had constructively received it."

And the witness, Finney, a C. P. A. who was employed by Hewitt to do their auditing, testified on redirect examination, as follows: "Q. Did you say in response to a question by Mr. Edwards that you advised Mr. Davis to include in his tax return this ten percent of the net of the title and check guarantee fund that accrued to him at the end of each fiscal year? A. Yes, sir. Q. You said there were two reasons for that, one for his protection and one for Mr. Hewitt's protection. Will you explain what you mean by that? A. If Mr. Davis had not reported it in his return,—you see the fiscal year of the partnership ended on September 30th and Mr. Davis' calendar year as an individual on December 31, so by December 31st the bonus had been determined and accrued as a liability on the books of the partnership, and if he had not reported on his return the government agents could have claimed that he should have reported it and that it

was taxable to him, whether he actually reduced it to physical possession or not. Then the other angle from Mr. Davis' viewpoint would be, if he didn't choose to follow the method of reporting that I, in my opinion, thought he should follow, he might end up with several years' bonus accumulated and paid off at one time and he would have to throw it all in one tax return, if he had not elected to report it on the constructive-receipt basis, which would run him up into a high bracket and probably cost him more money. The other part of your question as to how it affected Mr. Hewitt was this: Mr. Hewitt, or the partnership rather, was taking it as a deduction, without ever having actually paid it when it accrued. I think that even though Mr. Davis had not reported it, Mr. Hewitt or the partnership could have still deducted it, but it strengthened our position that it was a bona fide bonus, set up in good faith, and that it was a genuine deduction to which the partnership was entitled. His reporting it strengthened the partnership's hand in the matter."

Copies of the Federal income tax returns for the years 1953 and 1954, to the same effect as the testimony, were admitted without objection. It further appears that the plaintiff Davis made returns for the years 1953 and 1954 according to figures supplied by the auditor for the defendants, the same auditor having made tax returns for the defendants.

We understand that the rule of law now under consideration does not apply where evidence of the same nature is allowed to be introduced without objection. See *Savannah Electric Co.* v. *Crawford,* 130 *Ga.* 421 (60 S. E. 1056); *Waters* v. *Wells,* 155 *Ga.* 439 (4) (117 S. E. 322); *Smith* v. *State,* 210 *Ga.* 713 (4) (82 S. E. 2d 507); *Copeland* v. *Ruff,* 20 *Ga. App.* 217 (1) (92 S. E. 955); *Payne* v. *Simmons,* 27 *Ga. App.* 506 (2) (109 S. E. 168); *Trawick* v. *Chambliss,* 42 *Ga. App.* 333 (1) (156 S. E. 268); *L. & N. R. Co.* v. *McCamy,* 72 *Ga. App.* 769, 772 (35 S. E. 2d 206); *Holsenbeck* v. *Arnold,* 75 *Ga. App.* 311 (2) (43 S. E. 2d 348); *State Highway Board* v. *Coleman,* 78 *Ga. App.* 54, 57 (50 S. E. 2d 262); and *Kell* v. *Hunter,* 84 *Ga. App.* 792 (67 S. E. 2d 597). See also *Carmichael Tile Co.* v. *McClelland,* 213 *Ga.* 656 (3) (100 S. E. 2d 902). This principle of law has been applied even in offers of settlement. See *Parker & Co.* v. *Glenn,* 90 *Ga. App.* 500, 505 (83 S. E. 2d 263). This contention of counsel for the defendants is without merit.

■ We come next to consider the second question presented by this record: Did the trial court err in failing to charge the jury, without a request, that the failure of Davis faithfully and substantially to perform his part of the alleged contract constituted a defense, pro tanto, to his suit? Counsel for the defendants in support of the contention for reversal in this ground call our attention to Code §§ 20-1101 and 20-1103. Code § 20-1101 reads: "Performance, to be effectual, must be by the party bound to perform, or his agent (where personal skill is not required), or someone substituted, by consent, in his place. It must be a substantial compliance with the spirit, and not the letter only, of the contract, and done within a reasonable time." Code § 20-1103 reads: "In a severable contract, or one admitting of apportionment, a part performance may be a defense pro tanto." It is contended that *Orr v. Cooledge,* 117 *Ga.* 195 (1) (43 S. E. 527) makes a less formal statement of the principle of law here under discussion. Also, it is contended that the court failed to instruct the jury sufficiently to cover the contentions of the defendants. It is contended that the statement of the trial judge "the plaintiff's contention that the defendants are indebted to him in the amount specified in the plaintiff's petition ($8,400)" was not sufficient. The court then informed the jury that the defendants had denied that the defendants were indebted to the plaintiff Davis in any sum whatsoever but it is contended that nowhere in the charge did the court instruct the jury with reference to the contentions made by the defendants that Davis had failed of faithful performance of the contract, if any contract existed; nor did anything in the charge of the court instruct or permit the return of a verdict in favor of the plaintiff of any other sum than $8,400. Counsel further contended in this connection that the record abounds with evidence on behalf of the defendants illustrating and substantiating the contentions that the plaintiff Davis failed of such performance. In this connection we might call attention to the fact that the plea and answer of the defendants made a general denial. The suit was on an open account. There was nothing in the answer concerning the contentions which the defendants sought to establish by evidence. In such a situation the court is not required to charge the contentions of the defendants shown by evidence only; and without such pleadings the defend-

ants have no just right to complain that the failure of the court to so charge the principle of law is reversible error, in the absence of a request to charge. This question is dealt with extensively in *Lewis* v. *Duggan,* 85 *Ga. App.* 733 (70 S. E. 2d 66). In *Central Railroad* v. *Harris,* 76 *Ga.* 501 the Supreme Court held that the trial court could not charge the law of the case (an injury case) without charging on the defense of the rule that the plaintiff's husband was on the train and attempted to jump off and was thus injured. The facts and pleadings there are not similar in any way to the facts and pleadings in the instant case. This contention is without merit.

■ The third issue raised is that the trial court should have charged, without a request, that if the jury should find that the sum sued for was a mere gratuity, the plaintiff would not be entitled to recover. As to this question, there is nothing in the pleadings of either party to show that the word "bonus" meant a gratuity. Since the issue is not submitted by the pleadings, the court was not required to charge on this point, as discussed in division 2 hereinabove.

The court did not err in any of the rulings.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*